NICHOLAS TRUTANICH
United States Attorney
District of Nevada
Nevada Bar Number 13644
NICHOLAS D. DICKINSON
Assistant United States Attorney
United States Attorney's Office
501 Las Vegas Blvd. South, Suite 1100
Las Vegas, Nevada 89101
Phone: (702) 388-6175
Nicholas.Dickinson@usdoj.gov

GUSTAV W. EYLER
Director,
Consumer Protection Branch
U.S. Department of Justice
MATTHEW J. LASH
YOLANDA MCCRAY JONES
Trial Attorneys
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
Phone: (202) 514-3764, (202) 305-7016
Matthew.J.Lash@usdoj.gov
Yolanda.d.McCray.Jones@usdoj.gov
*Attorneys for the United States of America*

FILED
ENTERED                    RECEIVED
                           SERVED ON
COUNSEL/PARTIES OF RECORD

AUG - 5 2020

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____ DEPUTY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CRIMINAL INDICTMENT** |
| Plaintiff, | Case No. 2:20-cr- *196 GMN NJK* |
| v. | **VIOLATIONS:** |
| ALEX QUAGLIA and PATRICK FRASER, | Conspiracy to Commit Mail Fraud (18 U.S.C. § 1349) |
| Defendants. | Mail Fraud (18 U.S.C. § 1341) |

**THE GRAND JURY CHARGES THAT:**

**Introductory Allegations**

1.    The defendants, **ALEX QUAGLIA** and **PATRICK FRASER**, together with others, mass-mailed fraudulent prize notifications that were intended to mislead the recipients in the United States and other countries into believing that they would receive a large amount of money upon payment of a small fee.

2.    Defendants **ALEX QUAGLIA** and **PATRICK FRASER** operated their fraudulent mass-mail schemes from Vancouver, British Columbia, Canada. **QUAGLIA** and **FRASER** operated the fraudulent mass-mail schemes under the names of multiple companies that they incorporated in different jurisdictions and in the names of various straw owners (i.e., individuals who had little to no involvement in the mass-mail schemes). **QUAGLIA** incorporated one of these companies in Nevada.

3.    Defendant **ALEX QUAGLIA** operated a mass-mail scheme that began no later than 2000 and continued through February 2018. Defendant **PATRICK FRASER** and Co-Conspirator #1 joined **QUAGLIA** in operating this scheme from approximately 2014 to December 2015. **QUAGLIA, FRASER**, and Co-Conspirator #1 mass-mailed fraudulent prize notifications throughout the world, including Nevada and other locations within the United States. **QUAGLIA** and **FRASER** rented mail boxes throughout the world, including in Nevada and other locations within the United States, to receive victim payments.

4.    Defendant **PATRICK FRASER** and Co-Conspirator #1 operated a separate mass-mail scheme from approximately December 2015 to February 2018. **FRASER** and Co-Conspirator #1 mass-mailed fraudulent notifications to recipients outside the United States. **FRASER** and Co-Conspirator #1 rented mail boxes throughout the world, including Nevada and other locations within the United States, to receive victim payments.

## COUNT 1
### CONSPIRACY TO COMMIT MAIL FRAUD
### 18 U.S.C. § 1349

5.    Paragraphs 1-3 of this Indictment are hereby re-alleged and incorporated herein by reference.

2

6.    Beginning no later than 2000 and continuing through in or around February 2018, in the District of Nevada and elsewhere, defendants

**ALEX QUAGLIA** and
**PATRICK FRASER**

did knowingly and willfully combine, conspire, confederate, and agree with each other, Co-Conspirator #1, and with others known and unknown to the grand jury to commit mail fraud, in violation of 18 U.S.C. § 1341.

### The Object of the Conspiracy

7.    The object of the conspiracy was for defendants **ALEX QUAGLIA**, **PATRICK FRASER**, and their co-conspirators to enrich themselves by causing victims to send payments in response to materially misleading prize notifications.

### The Manner and Means of the Conspiracy

8.    Defendants **ALEX QUAGLIA** and **PATRICK FRASER** caused fraudulent prize notifications to be sent by mail to victims, many of whom were elderly and vulnerable. The prize notifications falsely represented that the victims had specifically been chosen to receive a large cash prize – typically over $1 million – and would receive the prize upon payment of a fee that generally ranged from $19.95 to $39.95. Victims who paid the fee did not receive the cash prize.

9.    Defendants **ALEX QUAGLIA** and **PATRICK FRASER** caused many different fraudulent prize notifications to be sent by mail. After victims sent payments by mail, **QUAGLIA** and **FRASER** sent additional fraudulent prize notifications to those victims by mail.

10.    Defendant **ALEX QUAGLIA** obtained the names and addresses of potential victims from other individuals and companies that sold mailing lists. **QUAGLIA**, in turn, sold to other fraudulent mass-mailers the names and addresses of victims who had sent payments in response to **QUAGLIA**'s notifications.

11.    Defendants **ALEX QUAGLIA** and **PATRICK FRASER** caused each fraudulent prize notification to appear to be personalized. Each fraudulent prize notification

contained the recipient's address, was addressed specifically to the recipient, and usually repeated the recipient's name several times throughout the notification. Except for the recipient's name and address, however, the same notification was mass-mailed to thousands of people.

12. Defendants **ALEX QUAGLIA** and **PATRICK FRASER** did not send the fraudulent prize notifications in their own names or in the names of **QUAGLIA's** companies – companies that **QUAGLIA** operated and controlled but that generally were incorporated under other individuals' names. Instead, **QUAGLIA** and **FRASER** sent the notifications in the names of fictitious, non-existent companies such as "Economic Disbursement Services" and "National Prize Reporting Agency," and under the names of fictitious individuals.

13. In addition to the false and misleading language that was intended to make recipients think they had already been selected to win a large cash prize, the fraudulent prize notifications typically included language that said the company was a "research and reporting service" and the recipient had not yet won. This language, which typically was in a smaller font on the reverse side of the notification, did not correct the false and misleading representations.

14. The fraudulent prize notifications included pre-addressed return envelopes and directed the recipients to use these envelopes to send their fee by cash, check, money order, or credit card number. There were different return addresses for different notifications.

15. Defendants **ALEX QUAGLIA** and **PATRICK FRASER** caused mail boxes around the world to be rented to receive the payments, including mail boxes in Nevada and other locations within the United States. These mail boxes were usually in UPS Stores and other private stores that rent mail boxes. **QUAGLIA** and **FRASER** caused these mail boxes to be opened in names other than their own.

16. efendant **ALEX QUAGLIA** used an elaborate and elusive system to handle payments sent to his mail boxes in the United States. Victim payments sent to **QUAGLIA-**

controlled mail boxes in Las Vegas, Nevada, and other locations in the United States, were forwarded to a company in Cheyenne, Wyoming. The company in Cheyenne, Wyoming, forwarded the mail to a company in Buffalo, New York. The company in Buffalo, New York, carried QUAGLIA's mail by truck across the Canadian border to a company in Mississauga, Ontario. The company in Mississauga, Ontario, then shipped the mail to QUAGLIA in Vancouver, British Columbia.

17.    Defendant ALEX QUAGLIA relayed victim payments to a payment-processing company in Vancouver. The payment-processing company disbursed the funds as directed by QUAGLIA, such as to QUAGLIA's companies, the private stores that provided mail boxes, and the companies that printed the notifications. The payment-processing company converted all forms of payments – including cash, checks, money orders, and credit card payments – into bank deposits, but QUAGLIA sometimes deposited the cash directly at banks and currency exchanges.

18.    Defendant ALEX QUAGLIA was involved in every aspect of the fraudulent mass-mail scheme. QUAGLIA hired, fired, and supervised his employees, including Co-Conspirator #1, and determined how much they were paid. QUAGLIA approved the fraudulent notifications that were sent by mail. QUAGLIA decided when to send the notifications, where to send the notifications, and how many notifications to send. QUAGLIA decided where to open mail boxes, which mail boxes to use for particular notifications, and when to stop using mail boxes. QUAGLIA himself picked up victim payments from mail boxes he controlled in the Vancouver area. QUAGLIA himself went to banks, currency exchanges, and the Vancouver payment processor to deposit cash payments from victims.

19.    In 2014 and 2015, defendant PATRICK FRASER joined QUAGLIA in operating many aspects of the fraudulent mass-mail scheme. FRASER helped QUAGLIA decide when to send the notifications, where to send the notifications, and how many notifications to send. FRASER helped QUAGLIA open mail boxes, decide which mail boxes to use for particular notifications, and decide when to stop using mail boxes.

5

All in violation of Title 18, United States Code, Section 1349.

**COUNTS 2-8**
**MAIL FRAUD**
**18 U.S.C. § 1341**

20.     Paragraphs 1-3 and 6-19 of this Indictment are hereby re-alleged and incorporated herein by reference.

21.     Beginning no later than 2000 and continuing through in or around February 2018, in the District of Nevada and elsewhere, defendants, as identified below, together with others known and unknown to the Grand Jury, did devise and intend to devise and participate in, a material scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, and for purposes of executing such scheme and artifice, and attempting to do so, did, on the dates set forth below, knowingly cause the following to be mailed and delivered by the United States Postal Service:

| COUNT | DEFENDANT(S) | APPROXIMATE DATE | DESCRIPTION |
|---|---|---|---|
| 2 | ALEX QUAGLIA and PATRICK FRASER | August 14, 2015 | Caused fraudulent prize notification to be mailed to P.P. in Nevada |
| 3 | ALEX QUAGLIA and PATRICK FRASER | August 29, 2015 | Caused fraudulent prize notification to be mailed to A.C. in Nevada |
| 4 | ALEX QUAGLIA and PATRICK FRASER | September 29, 2015 | Caused fraudulent prize notification to be mailed to J.I. in Nevada |
| 5 | ALEX QUAGLIA and PATRICK FRASER | October 1, 2015 | Caused fraudulent prize notification to be mailed to K.K. in Nevada |

| 6 | **ALEX QUAGLIA** and **PATRICK FRASER** | October 25, 2015 | Caused fraudulent prize notification to be mailed to M.I.Q. in Nevada |
|---|---|---|---|
| 7 | **ALEX QUAGLIA** and **PATRICK FRASER** | October 26, 2015 | Caused fraudulent prize notification to be mailed to V.W. in Nevada |
| 8 | **ALEX QUAGLIA** | August 4, 2016 | Caused a check for $200 to be sent by mail by a payment-processing company in Vancouver, British Columbia, Canada, to a UPS Store in Las Vegas, Nevada |

All in violation of Title 18, United States Code, Section 1341.

## COUNT 9
## CONSPIRACY TO COMMIT MAIL FRAUD
## 18 U.S.C. § 1349

22.     Paragraph 4 of this Indictment is hereby re-alleged and incorporated herein by reference.

23.     Beginning in or around December 2015 and continuing through in or around February 2018, in the District of Nevada and elsewhere, defendant

### PATRICK FRASER

did knowingly and willfully combine, conspire, confederate, and agree with Co-Conspirator #1 and others known and unknown to the grand jury to commit mail fraud, in violation of 18 U.S.C. § 1341.

### The Object of the Conspiracy

24.     The object of the conspiracy was for defendant **PATRICK FRASER** and his co-conspirators to enrich themselves by causing victims to send payments in response to materially misleading prize notifications.

### The Manner and Means of the Conspiracy

25.     Defendant **PATRICK FRASER** caused fraudulent prize notifications to be sent by mail to the victims, many of whom were elderly and vulnerable. The prize

7

notifications falsely represented that the victims had been specifically chosen to receive a large cash prize – typically over 1 million euros – and would receive the prize upon payment of a small fee. Victims who paid the fee did not receive the cash prize.

26. Defendant **PATRICK FRASER** caused many different fraudulent prize notifications to be sent by mail. After victims sent payments by mail, **FRASER** sent those victims additional fraudulent prize notifications.

27. Defendant **PATRICK FRASER** obtained the names and addresses of potential victims from other individuals and companies that sold mailing lists. **FRASER**, in turn, sold to other fraudulent mass-mailers the names and addresses of victims who had sent payments in response to notifications.

28. Defendant **PATRICK FRASER** caused each fraudulent prize notification to appear to be personalized. Each fraudulent prize notification contained the recipient's address, was addressed specifically to the recipient, and usually repeated the recipient's name several times throughout the notification. Except for the recipient's name and address, however, the same notification was mass-mailed to thousands of people.

29. Defendant **PATRICK FRASER** operated the fraudulent mass-mail scheme under the names of multiple companies. **FRASER** incorporated these companies in different jurisdictions and in the names of individuals who had little to no involvement in the mass-mail scheme.

30. Defendant **PATRICK FRASER** defrauded victims through the use of fictitious names. **FRASER** did not send the fraudulent prize notifications in the names of his companies – companies that **FRASER** operated and controlled but that were incorporated under other individuals' names. Nor did **FRASER** send the fraudulent notifications in his own name. Instead, **FRASER** sent the notifications in the names of fictitious, non-existent companies such as the "National Prize Center" and "International Award Council," and in the name of fictitious individuals—such as those notifications sent to Germany under the pseudonym "Bruno Henner."

31. In addition to the false and misleading language that was intended to make recipients think they already had won the large cash prize, the fraudulent prize notifications typically included language that said the company was a research and reporting service and the recipient had not yet won. This language, which typically was in a smaller font on the reverse side of the notification, did not correct the false and misleading representations.

32. The fraudulent prize notifications included pre-addressed return envelopes and directed the recipients to use these envelopes to send their fee by cash, check, money order, or credit card number. There were different return addresses for different notifications.

33. Defendant **PATRICK FRASER** caused mail boxes to be set up around the world to receive the payments, including mail boxes in Nevada and other locations within the United States. These mail boxes were usually in UPS Stores and other private stores that rent mail boxes. **FRASER** caused these mail boxes to be opened in names other than his own.

34. Defendant **PATRICK FRASER** used an elaborate and elusive system to handle payments sent to his mail boxes in the United States. Victim payments sent to **FRASER**-controlled mail boxes in Las Vegas, Nevada, and other locations in the United States, were forwarded to a company in Cheyenne, Wyoming. The company in Cheyenne, Wyoming, forwarded the mail to a company in Buffalo, New York. The company in Buffalo, New York, carried **FRASER**'s mail by truck across the Canadian border to a company in Mississauga, Ontario. The company in Mississauga, Ontario, then shipped the mail to **FRASER** in Vancouver, British Columbia.

35. From approximately December 2015 to September 2016, defendant **PATRICK FRASER** relayed victim payments to a payment-processing company in Vancouver that deposited the payments into bank accounts controlled by the payment-processing company. The payment-processing company disbursed the funds as directed by **FRASER** and Co-Conspirator #1, such as to **FRASER**'s companies and to vendors involved in the scheme. The payment-processing company could convert all forms of

payments – including cash, checks, money orders, and credit card payments – into bank deposits.

36.     After the payment-processing company in Vancouver ceased operations in September 2016, defendant **PATRICK FRASER** was unable to find an alternative financial institution to process fraudulently derived checks, money orders, and credit card payments. From approximately October 2016 until February 2018, **FRASER** and Co-Conspirator #1 collected only cash payments from victims.

37.     Defendant **PATRICK FRASER** was the scheme's primary decision-maker. **FRASER** supervised the employees, approved the fraudulent notifications that were sent, decided when to send the notifications, where to send the notifications, and how many notifications to send, and decided where to open mail boxes.

All in violation of Title 18, United States Code, Section 1349.

## Forfeiture Allegation One

1. The allegations contained in Counts One through Seven of this Criminal Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c).

2. Upon conviction of any of the felony offenses charged in Counts One through Seven of this Criminal Indictment,

**ALEX QUAGLIA and**
**PATRICK FRASER,**

defendants herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C § 1341, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) with 1961(1)(B), or 18 U.S.C § 1349, conspiracy to commit such offense: an in personam criminal forfeiture money judgment including, but not limited to, at least an amount to be calculated pursuant to the forfeiture statute in this forfeiture allegation and Fed. R. Crim. P. 32.2(b)(2)(C).

3. If any of the property being subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), as a result of any act or omission of the defendants:

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants for the property listed above.

All pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C §§ 1341 and 1349; and 21 U.S.C. § 853(p).

11

## Forfeiture Allegation Two

1. The allegations contained in Count Eight of this Criminal Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c).

2. Upon conviction of the felony offense charged in Count Eight of this Criminal Indictment,

### ALEX QUAGLIA,

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C § 1341, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) with 1961(1)(B), or 18 U.S.C § 1349, conspiracy to commit such offense: an in personam criminal forfeiture money judgment including, but not limited to, at least an amount to be calculated pursuant to the forfeiture statute in this forfeiture allegation and Fed. R. Crim. P. 32.2(b)(2)(C).

3. If any of the property being subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant for the property listed above.

All pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C §§ 1341 and 1349; and 21 U.S.C. § 853(p).

## Forfeiture Allegation Three

1.      The allegations contained in Count Nine of this Criminal Indictment are hereby re-alleged and incorporated herein by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c).

2.      Upon conviction of the felony offense charged in Count Nine of this Criminal Indictment,

## PATRICK FRASER,

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 18 U.S.C § 1341, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) with 1961(1)(B), or 18 U.S.C § 1349, conspiracy to commit such offense: an in personam criminal forfeiture money judgment including, but not limited to, at least an amount to be calculated pursuant to the forfeiture statute in this forfeiture allegation and Fed. R. Crim. P. 32.2(b)(2)(C).

3.      If any of the property being subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c), as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States of America, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant for the property listed above.

All pursuant to 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C §§ 1341 and 1349; and 21 U.S.C. § 853(p).

DATED: this 5th day of August, 2020.

**A TRUE BILL:**

/S/
FOREPERSON OF THE GRAND JURY

GUSTAV W. EYLER
Director

NICHOLAS TRUTANICH
United States Attorney

MATTHEW J. LASH
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice

NICHOLAS D. DICKINSON
Assistant United States Attorney
District of Nevada

YOLANDA MCCRAY JONES
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice

14